ANTONIE KAMINSKI ET AL. *v.* JOHN A. WLA-
DEREK.

*Power of Attorney—Construction—Lease With Option to Purchase—Statute of Frauds—Signature By Agent.*

An express power given by a husband to his wife, when about to go to Europe for an indefinite stay, as to property held by them as tenants by the entirety, to grant, convey, or assign, to collect rents, due or to become due, and "to do all other lawful acts and things whatsoever concerning the premises as fully and in every respect as I might or could do were I personally present," *held* to empower the wife to make a lease with an option of purchase.                              pp. 558, 559

The express power to grant or convey necessarily implied the power to sell, and that to collect rents due or to become due implied the power to rent or lease, since even if the premises had already been rented, it must have been contemplated that the existing tenancy might terminate and a new renting become necessary.                                            p. 558

A power to sell includes the power to give an option of purchase, the giving of an option being one form of preliminary step in making a sale.                                            p. 559

A contract for the sale of land sufficiently complies with the fourth section of the statute of frauds as regards the signature thereto on behalf of the vendor, if the latter's agent, acting under a power of attorney, signs it individually, without disclosing her principal. pp. 560, 561

*Decided January 13th, 1926.*

Appeal from the Circuit Court No. 2 of Baltimore City (STANTON, J.).

Bill by John A. Wladerek against Antonie Kaminski and Tekla Kaminski, his wife. From a decree for plaintiff, defendants appeal. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Milton Dashiell* and *George L. Fornoff,* for the appellants.

*James F. Thrift,* with whom were *T. Tilden Kelbaugh* and *McIntosh & Thrift* on the brief, for the appellee.

DIGGES, J., delivered the opinion of the Court.

On June 19th, 1920, Antoni Kaminski and Tekla Kaminski were the owners in fee simple, as tenants by the entirety, of a lot and improvements thereon in the City of Baltimore, known as No. 2044 Gough Street, the same having been acquired by deed from Jozef Sobus and wife; and being so seised, Antoni Kaminski, in contemplation of his absence from the state, executed a power of attorney to his wife, Tekla Kaminski, in the following form:

> "Know All Men By These Presents, That I, Antoni Kaminski, at present of Baltimore City and State of Maryland, intending hereby to leave the State of Maryland, do hereby constitute, nominate and appoint my wife, Tekla Kaminski, of Baltimore City and State of Maryland, to be my true, sufficient and lawful attorney, for me and in my name, place and stead, to grant,

convey or assign unto any purchaser or purchasers, their heirs or personal representatives and assigns, or to any body corporate, its successors and assigns, all those two lots of ground, known as No. 2313 Fleet Street, said property being on the south side of Fleet Street distant one hundred and twenty-five feet and nine inches east from Patterson Park Avenue, with a front of twelve feet and five inches on south side Canton Avenue and an even depth of sixty feet southerly of sixty feet, said property being subject to annual ground rent of $16.25. Being the same lot of ground which by deed dated May 3rd, 1920, and recorded among the Land Records of Baltimore City in Liber S. C. L. No. 3576, folio 15, from Ignacy Popiolek and wife to myself. And the lot being known as No. 2044 Gough Street, said property being on the north side of Gough Street distant one hundred and sixty feet eight inches east of Castle Street, with a front of fourteen feet four inches on the north side of Gough Street and an even rectangular depth of seventy-eight feet to an alley three feet wide, said lot being in fee simple. Being the same lot of ground which I have acquired from Jozef Sobus and wife. I also authorize and empower my wife, the said Tekla Kaminski, to collect all the rents or other sum of money which may be or become due to me and to give receipts therefor in my name and to pay all taxes or assessments, levied or assessed upon my property real or leasehold, and generally to do all other lawful acts and things whatsoever concerning the premises as fully and in every respect as I might or could do were I personally present at the doing thereof. Witness my hand and seal this 19th day of June, 1920.

"Antoni Kaminski.   (Seal)
"Test: Genevieve D. Jarzy."

"State of Maryland,
"City of Baltimore, to wit:

"I hereby certify, That on this 19th day of June in the year one thousand nine hundred and twenty before me, the subscriber, a Notary Public of the State

of Maryland, in and for Baltimore City aforesaid, personally appeared Antoni Kaminski and he acknowledged the aforegoing power of attorney to be his act and deed. As witness my hand and notarial seal.

                                "Genevieve D. Jarzy,
(Seal)                              "Notary Public."

This power of attorney was recorded on August 30th, 1921, in Liber S. C. L. 3774, folio 51, of the Land Records of Baltimore City. A day or two subsequent to the execution of this power of attorney, Antoni Kaminski went to Poland and remained until some time in the latter part of August or the first of September, 1923. During the absence of the husband, on the 24th day of June, 1922, Tekla Kaminski executed the following written agreement under seal with John A. Wladerek, the appellee:

"This agreement made this 24th day of June in the year nineteen hundred and twenty-two, between Tekla Kaminski of the City of Baltimore in the State of Maryland, hereinafter designated as Landlord, and John A. Wladerek of the City and State, hereinafter referred to as Tenant.

"Witness, that the said Landlord does hereby rent to the said Tenant, this room and cellar of the premises number 2044 Gough Street and all the fixtures and chattels contained therein consisting of one icebox; meat slicer; combination coffee and meat grinder; computing scale; counter scale; one Walker bin counter; one side of shelving with Walker bins; one side of plain shelving; saws and knife; two meat blocks and meat counter, for the term of one year beginning on the 24th day of June in the year nineteen hundred and twenty-two and ending on the 24th day of June in the year nineteen hundred and twenty-three, at and for the sum of·five hundred and forty dollars for said term, payable in equal monthly installments of forty-five dollars in advance on the 24th day of each and every month in said Agreement.

"And the said Tenant hereby covenants that he will keep the premises in good order, and surrender the

peaceful and quiet possession of the same at the end of said term, in as good condition as when received (the natural wear and decay of the property or unavoidable accidents excepted), and further, that the said Tenant will not do, suffer or permit anything to be done, in or about the premises, which will contravene the policy of insurance against loss by fire; and further, that whatever alterations or repairs the said Tenant shall be permitted to make shall be done at his own expense.

"It is further agreed that if the rent shall be ten days in arrear, the Landlord shall have the right to distrain for the same, and to re-enter and take possession; and if the Tenant shall violate any of the covenants on his part herein made, the Landlord shall have the right, without formal notice, to re-enter and take possession; and if the property shall be destroyed or rendered untenantable by fire the tenancy hereby created shall thereby terminate, and all liability for rent hereunder shall cease upon payment proportionately to the date of fire or other unavoidable accident.

"It is further agreed that the Tenant has the right and option to extend this Agreement for the period of another year after the termination of the term mentioned for the same rental and subject to all the covenants and agreements contained herein; and further the said Tenant has the right and option at any time dring the Agreement or the renewal of same to purchase the entire property number 2044 Gough Street in fee simple at and for the sum of Sixty-two hundred dollars ($6,200.00).

"The above Agreement has been read by both of us as witness our hands and seals the day first above written.

        ·"Tekla Kaminski    (Seal)
        "John A. Wladerek .  (Seal)

"Test: Philip Wladerek.

"Recorded August 23, 1922, in S. C. L. 3898, folio 602."

This agreement provided for the renting of a portion of the Gough Street premises and all the fixtures and chattels

contained therein to the appellee for the term of one year beginning the 24th day of June, 1922, for the sum of $540, payable in monthly installments of $45 in advance on the 24th day of each month. It was further agreed therein that the appellee had the right and option to extend the agreement for the period of another year after the termination of the term mentioned, for the same rental and subject to all covenants and agreements contained in the instrument; that at any time during the agreement or the renewal of the same, the appellee was given the option to purchase the entire property, 2044 Gough Street, in fee simple at and for the sum of $6,200. The appellee, immediately upon the execution of the agreement, entered into possession of the property rented to him as tenant and made improvements upon the property to the extent of about $400. He promptly paid the rent as it became due, and in May, 1923, about one month before the expiration of the first year, he saw Mrs. Kaminski and told her he was thinking of closing the deal as per the agreement, but was persuaded by her not to exercise the option of purchase at that time, as the rental meant a great deal to her; and it was suggested by her that he stay another year, paying the rent, and he could exercise the option to purchase before the second year expired. This was done. On November 6th, 1923, after the return of Antoni Kaminski, the attorney of the appellee wrote to the appellants stating that he had completed the search of the title of the property purchased from them by Mr. Wladerek, and asked them to be at his office on Thursday at one o'clock to sign the deed. They did not appear, but the appellee's attorney received a letter from the attorney for the appellants, dated November 9th, 1923, in which it was stated: "I am authorized by Antoni Kaminski and Tekla Kaminski to say that they do not wish to sell the property mentioned in your letter to them, i. e., 2044 Gough Street." On November 23rd of the same year the appellee, through his attorney, notified each of the appellants that he was desirous to consummate the purchase from them of the house in question, and with

that end in view, would be at their house, 2044 Gough Street, on the Friday following at 6 p. m., for the purpose of having them execute the deed and pay the money. Nothing having been done, on June 3rd, 1924, the appellee by letter informed the attorney for the appellants that he was desirous without further delay to consummate the purchase of the property in accordance with the agreement, and with this object in view advised them that on June 17th, 1924, at 4 p. m., he would be ready to pay in full for said property. On June 13th, 1924, he wrote a similar letter to both of the appellants. No response having been received, the appellee on June 23rd, 1924, one day before the expiration of the second year of the term, filed in Circuit Court No. 2 of Baltimore City a bill for specific performance of the agreement.

The bill alleged the making of the lease with the option to purchase as set forth in the agreement; that before the execution of same it was presented to the attorney of Tekla Kaminski, who approved it and advised the appellee that she had a power of attorney from her husband, who was then in Russia and would not return to America, and that Tekla Kaminski could do as she pleased with the property; that relying upon said statement the appellee executed the lease and entered into possession of the property; that the appellee engaged in the retail grocery business, and in order to fit the premises for such business he spent several hundred dollars in repairs and alterations, which he would not have done had he not intended to exercise the option to purchase the property; that having built up a substantial business by the fall of 1923, in November of that year he notified the appellant Tekla Kaminski of his decision to exercise the option; that from that time on he continued to notify the appellants or their attorneys of his desire to exercise the option, and his readiness and ability to pay for the property, but the defendants have refused to convey said property to him; that Antoni Kaminski and Tekla Kaminski, his wife, are the owners of the property; that after her husband

left this country, Tekla Kaminski, under and by virtue of
the power of attorney from him, conveyed the premises at
2044 Gough Street in fee to one of her attorneys, and on
the same day it was re-conveyed to her in fee simple; that
from the time the appellee entered into possession of the
premises on June 24th, 1922, until Antoni Kaminski re-
turned to his home in August or September, 1923, he regu-
larly paid the rent to the appellant, Tekla Kaminski, believ-
ing that she was the sole owner of the said property, as ad-
vised by her attorneys, and since the return to this country of
the appellant Antoni Kaminski the appellee has regularly
paid said rent to the appellants, who have accepted same and
receipted to him for it, up until the time of the filing of the
original bill of complaint in June, 1924; and further, that
the said defendants and each of them have accepted said
rent reserved in the lease with the option to purchase said
property in accordance with the terms thereof. The prayers
of the bill are, that the agreement may be specifically enforced
and the appellants be decreed to convey to the appellee the
aforesaid premises in accordance therewith, upon the pay-
ment of the purchase money still due and owing by the
appellee.

The appellants answered the bill of complaint, in which
answer the husband denied any knowledge of the making
of the lease, and both defendants denied all of the other
material allegations of the bill. After testimony was taken
in open court, and argument, the lower court decreed that
the appellee was entitled to a conveyance of the property
in fee simple, upon the payment of the purchase price
agreed to in the lease, and appointing a trustee to make said
conveyance. From this decree the appeal was taken.

The property here was held by the appellants as tenants
by the entirety, and the husband being about to leave the
country for Europe, executed to his wife a power of attor-
ney. The language of this power is broad and compre-
hensive and specifically gives the donee of the power the
authority, "for me and in my name, place and stead, to

grant, convey or assign unto any purchaser or purchasers, their heirs or personal representatives and assigns, or to any body corporate, its successors and assigns," the property known as No. 2044 Gough Street (particularly describing same); "I also authorize and empower my wife, the said Tekla Kaminski, to collect all the rents or other sums of money which may be or become due to me and to give receipts therefor in my name and to pay all taxes or assessments, levied or assessed upon my property real or leasehold, and generally to do all other lawful acts and things whatsoever concerning the premises as fully and in every respect as I might or could do were I personally present at the doing thereof." As shown, this power of attorney was executed and acknowledged before a notary public, and recorded among the land records of Baltimore City, some ten months before the execution of the lease with the option to purchase between Tekla Kaminski and the appellee. It is clear from the evidence in this case that the appellee desired to secure a location for the conduct of a grocery business, and had his attention called to the property at 2044 Gough Street, by his brother, as being suitable for that purpose. The appellee and his brother then called upon Tekla Kaminski and inquired if she would rent the property, and were told by her that she preferred to sell. The appellee was unwilling to buy at that time, but told her that he would rent the property with an option to purchase. This was agreed to by her, and shortly thereafter the appellee in company with his brother called upon the attorney for Mrs. Kaminski and told him of their purpose to lease with an option to purchase, and were told by him that Mrs. Kaminski had been to see him and that those condtions were satisfactory; and in reply to the direct question as to whether or not she had the authority to sell, informed the appellee that she had a power of attorney from her husband and she could do whatever she desired with the property. The appellee then had his attorney prepare the agreement, which was signed in duplicate and one copy left with Mrs. Kaminski at the time

it was signed.  The testimony further shows that the appellee
notified Mrs. Kaminski of his desire to exercise the option
to purchase before the expiration of the first year's renting,
but upon Mrs. Kaminski's urgent request that he not press
the exercise of the option at that time, but wait until the end
of the second year, for the reason that the rent which he was
paying was necessary for the support of herself and children,
he refrained from demanding a conveyance in accordance with
the option to purchase, but continued the renting for the sec-
ond year as provided in the agreement.  The theory of the
appellants is that they are not bound to convey the property
because the power of attorney given by Mr. Kaminski to his
wife did not authorize her to lease it and give an option of
purchase to the tenant.  It, therefore, becomes necessary to
examine the power of attorney with this in view.

In the case of *Posner v. Bayless,* 59 Md. 56, the power of
attorney specifically authorized the donee to execute a mort-
gage, and under that power the donee created a redeemable
ground rent; and that action was attacked on the ground that
it was not in strict conformity with the authority conferred
by the power of an attorney.  This Court said in that case:
"But the rule that the authority conferred by a letter of attor-
ney must be strictly pursued, cannot override the general and
cardinal rule, that the intention of the party creating the
power must prevail in its construction, and that such intention
is to be ascertained from the language employed and the object
to be accomplished.  The instrument, moreover, must be read
in the light of such surrounding circumstances as courts
always consider when called upon to construe any written
contract."  In *American Bonding Co. v. Ensey,* 105 Md.
211, we quoted with approval from *Clark & Skyles on
Agency,* pp. 516-518, as follows: "The guiding principle
in the construction of powers is to be derived from a con-
sideration of the result which the agent or depositary of
power is appointed to accomplish.  When a court is called
on to construe a written authority, its first duty is to ascer-
tain what intention or purpose the principal had in view

when he gave the authority to the agent, and when that has been ascertained the power is to be construed so as to effect that purpose, if possible, instead of defeating it. In conformity with such purpose or intent, a general power may be limited, or a limited power made general. * * * In order to arrive at the intention of the parties, and to interpret the scope and meaning of the power, the court may receive evidence as to the relative positions of the parties, their obvious design as to the objects to be accomplished, and the nature of the business or transaction in which the principal was engaged." See also *State, use of Ranstead, v. Banks,* 48 Md. 520; *Commonwealth v. Hawkins,* 83 Ky. 250; and *Holladay v. Daily,* 19 Wall. 610. In the case last cited the court determined that the rule as to the discovery and carrying out of the intent of the grantor of the power was of equal potency with the general rule as to strict construction.

Testing the present case by the rule laid down by these authorities, it is clear that the object intended to be accomplished by the donor of the power, Antoni Kaminski, was to place his wife in a position to deal with his property and the property held by himself and wife as tenants by the entirety in the same manner and as fully and completely as he might do were he present and acting in conjunction with her. He was about to leave this country for Europe without any definite time for return, and with, as shown by the evidence, at least a possibility of his not returning at all. The letter of attorney gives the agent the express power to grant, convey and assign the real estate involved in this case; and it is clear from this language that he intended his wife to have the power to sell, the express power to grant and convey necessarily implying the power to sell. And again, the express power to collect rents, due or to become due, necessarily implies the power to rent or lease, for even though the premises may have been rented at the date of the power of attorney, it must have been contemplated that the then tenancy might terminate and a new renting become

necessary.   That these powers of selling and renting are necessarily implied from the express powers to grant, convey and collect rents, becomes irresistible when to the implication is added the direct and positive express power granted "to do all other lawful acts and things whatsoever concerning the premises, as fully and in every respect as I might or could do, were I personally present at the doing thereof." The giving of an option to purchase is one form of preliminary step in making a sale.   When an option is given to purchase, it is an offer to sell at the designated price, and becomes a completed contract of sale if the option is exercised within the time prescribed therein.   It therefore follows that the power of attorney given by the husband in this case to his wife conferred upon her the authority to do for him and in his place everything included or comprehended by the agreement between Tekla Kaminski and the appellee.

The deeds from Tekla Kaminski to her attorney, Fornoff, and from him back to her, are not set out in the record, and no contention as to their legal effect is made by either of the parties; and for the purposes of this case, in the view we have taken of it, it is immaterial whether these deeds were effectual in transferring the interest of the husband, Antoni Kaminski, in the entirety property to his wife. If they were effectual, the wife was the owner of the property, subject only to the inchoate right of the husband should he survive; and if ineffectual, it left the title to the property standing in the husband and wife as tenants by the entirety at the time the agreement with the appellee was entered into. In either event the authority contained in the power of attorney was sufficient for the wife to convey the interest of the husband.   The agreement of renting, including the option to purchase, was signed by Tekla Kaminski individually; and the agreement itself does not in any way disclose that her husband had an interest in the property or that she was acting as his attorney or agent; yet at the time she signed the agreement the power of attorney was of record

among the land records of Baltimore City, and she had full authority and power to sell and convey not only her own interest in the property, but that of her husband; and it is abundantly proven by the testimony that this is what she intended to do and thought she was doing at the time of the execution of the agreement. If the sale in this case had been of chattels or personal property, instead of real estate, she could have made a binding contract for the sale thereof wthout disclosing the principal for whom she was acting; and the same would be true as to real estate, except for the fourth section of the Statute of Frauds, which provides that: "No action shall be brought * * * whereby to charge the defendant * * * upon any contract of sale of lands, tenements or hereditaments, or any interest in or concerning them * * * unless the agreement upon which such action shall be brought, or some memorandum or note thereof shall be in writing, and signed by the party to be charged therewith, or some other person thereunto by him lawfully authorized." In 25 *R. C. L.*, sec. 291, p. 657, the general rule is stated to be: "The statute does not change the law as to the rights and liabilities of principals and agents, either as between themselves, or as to third persons. Its provisions are complied with if the names of competent contracting parties appear in the writing, and if a party is an agent, it is not necessary that the name of the principal be disclosed. Accordingly, if a contract, within the provisions of the statute, is made by an agent, whether the agency is disclosed or not, the principal may sue or be sued as in other cases." The qualification for the rule is stated to be: "That if a party to a contract expressly purports in the memorandum to be contracting as an agent of an undisclosed principal and does not in any way purport to bind himself, the failure to disclose the name of the principal will render the memorandum insufficient." The present case comes under the general rule and not under the qualification. The agreement itself does not disclose the principal, but is signed by the agent in her individual capacity, although the testimony proves conclu-

sively that the appellee was told by Mrs. Kaminski and by her attorneys that she had the authority to make the agreement under and by virtue of the power of attorney from her husband; which, in fact, she had. It must, therefore, be held that the agreement was a full compliance with the requirements of the Statute of Frauds.

The testimony further shows that the husband, after his return and after he had full knowledge of the provisions of the agreement as to the option to purchase, received rent from the property and that his attorney receipted for the rent as attorney for both the husband and wife. It was argued with force on behalf of the appellee, supported by authorities, that this constituted a ratification by the husband of the lease and every part thereof, and that he is now estopped from denying its validity. Because of the views we have hereinbefore expressed, this question, for the purposes of this case, is immaterial; for we hold that the provisions of the lease, including the option to purchase, are binding upon the husband without regard to whether or not his acts of ratification have estopped him. It might be added that the fact that the agent in this case was dealing with property of which she was a tenant by the entirety, strengthens the position contended for by the appellee, as less evidence might be sufficient under such circumstances to establish the agency. For the reasons stated, the decree of the lower court must be affirmed.

*Decree affirmed, with costs to the appellee.*